ALFRED H. C. BISHOP, by his next Friend, *vs.* THE UNION RAILROAD COMPANY.

While two horse cars attached together in charge of a driver on the front platform of the leading car and drawn by a single horse were driving over the tracks of the company in a public highway in the city of Providence from the stables to the repair shops, a lad six years old, to outstrip a playmate with whom he was racing, jumped on the rear platform of the leading car and soon afterwards fell off, or jumped off, and was seriously injured. The lad's mother testified that he told her that he fell off, but in cross examination, when asked if he did not say that he was afraid the driver would see him and therefore jumped off, replied, "Yes, sir; I think probably he did, but am not quite sure he told me he fell off." The driver testified that he did not see the boys and knew nothing of the accident, which occurred between two and three o'clock P. M., until the evening.

In an action against the horse car company to recover damages for the injury:

*Held,* that the company was not chargeable with negligence.

*Held,* further, that the driver of the car was not chargeable with any neglect of duty.

*Held,* further, that the company was not bound to employ a second man to guard the cars from intrusion during their transit.

*Held,* further, that the company was under no duty nor obligation of care to the boy.

A city ordinance provided that "cars driven in the same direction shall not approach each other within a distance of three hundred feet except in case of accident, when it may be necessary to connect two cars together, and also except at stations."

*Held,* that the ordinance applied only to cars going in the same direction and driven separately, and was inapplicable to the case at bar.

PLAINTIFF'S petition for a new trial. The facts involved in the case are stated in the opinion of the court.

*George T. Brown & William H. Sweetland,* for plaintiff. The defendant was negligent. *Jetter* v. *N. Y. & Harlem R. R. Co.* 2 Ab. Ct. App. Dec. 458 ; *Beisegel* v. *N. Y. Central R. R. Co.* 14 Ab. Pr. N. S. 29, 35 ; *McCully* v. *Clarke & Thaw,* 40 Pa. St. 399, 406 ; *Baltimore City Passenger R. R. Co.* v. *McDonnell,* 43 Md. 534 ; *Karle* v. *Kansas City, St. Jos. &c. R. R. Co.* 55 Mo. 476 ; *Wright* v. *Malden & Melrose R. R. Co.* 4 Allen, 283, 290.

The age of the plaintiff precluded contributory negligence. Wharton on Negligence, §§ 88, 308; *Chicago & Alton R. R. Co.* v. *Becker,* 76 Ill. 25, 32, 33 ; *Hestonville, &c. R. R. Co.* v. *Kelly,* 102 Pa. St. 115 ; *Plumley* v. *Birge,* 124 Mass. 57 ; 2 Thompson on Negligence, 1180, 1191.

Whether or not the plaintiff exercised such care as could be required from a child of his age is for the jury to decide. *McMillan* v. *B. & M. R. R. Co.* 46 Iowa, 231, 233 ; *Baltimore & Ohio R. R. Co.* v. *The State,* 30 Md. 47 ; *Railroad Company* v. *Gladmon,* 15 Wall. 401 ; *Smith* v. *Atchison, Topeka & Santa Fé R. R. Co.* 25 Kans. 738, 742 ; *Detroit & Milwaukee R. R. Co.* v. *Van Steinburg,* 17 Mich. 99; *Bernhard* v. *Rensselaer & Saratoga R. R. Co.* 1 Ab. Ct. App. Dec. 131, 134 ; Bigelow on Torts, 320 ; *Costello* v. *Syracuse &c. R. R. Co.* 65 Barb. S. C. 92 ; *Philadelphia & Reading R. R. Co.* v. *Spearen,* 47 Pa. St. 301 ; *Chicago & Alton R. R. Co.* v. *Gregory,* 58 Ill. 226 ; *Benton* v. *C. R. I. & P. R. R. Co.* 55 Iowa, 496 ; *Meeks* v. *Southern Pacific R. R. Co.* 56 Cal. 513 ; *Wyatt* v. *Citizens' R. R. Co.* 55 Mo. 485; *Gray* v. *Scott,* 66 Pa. St. 345.

*Francis W. Miner,* for defendant, cited *Dietrich* v. *Baltimore & Hall's Springs R. R. Co.* 58 Md. 347 ; *Hestonville Passenger Railway Co.* v. *Connell,* 88 Pa. St. 520 ; *Central Branch Union Pa-*

*cific R. R. Co.* v. *Henigh*, 23 Kans. 347 ; *Morrissey* v. *Eastern Railroad*, 126 Mass. 377, 380.

*January* 9, 1884. DURFEE, C. J.    This is case for negligence. The defendant is a horse railroad company, having its rails laid in the streets of the city of Providence.    On the afternoon of July 7, 1883, a driver in the employ of the company took two empty passenger cars belonging to it from the stable in Elmwood to the repair shop on Thurber's Avenue.    The two cars were fastened together, one behind the other, and drawn by a single horse.    They were driven slowly along, the driver occupying the platform in front of the forward car, looking beside and before him.    In their passage they were driven along Broad Street on the track close by the sidewalk of Grace Church Cemetery.    The plaintiff, a boy six years old, was on the sidewalk with a boy named Hall, eleven years old.    Hall was riding a velocipede and the plaintiff was racing with him.    The plaintiff, to get ahead of Hall, jumped on the rear platform of the front car, and, after remaining there a little while, either fell off or jumped off and fell.    The mother of the plaintiff, who was permitted to relate what her boy told her about the accident, testified at first that he told her that he fell off, but, on being asked in cross examination if he did not tell her that he was afraid the driver would see him and jumped off, replied, " Yes, sir ; I think probably he did, but am not quite sure he told me he fell off."    The accident occurred between two and three o'clock.    The driver did not see the boys and knew nothing of the accident when it happened, and heard nothing about it until nearly seven o'clock.    The plaintiff was badly injured, doubtless by collision with the second car.    The plaintiff offered in evidence, for the purpose of proving the negligence of the company, an ordinance of the city of Providence containing rules and regulations for railroads in the city.    The defendant objected, on the ground that the company had not consented to the ordinance, and that without consent it was not bound by it.    The court sustained the objection and the plaintiff excepted.    The defendant moved the court, after the plaintiff's testimony was in, to nonsuit him.    The court granted the motion and the plaintiff excepted.    The plaintiff now petitions for a new trial for error in these two rulings.

The ordinance was offered for the purpose of putting in proof

the following rule, to wit: " Cars driven in the same direction shall not approach each other within a distance of three hundred feet, except in case of accident, when it may be necessary to connect two cars together, and also except at stations." We do not think the rule is applicable in the case at bar. It applies when two cars, going in the same direction, are driven separately, so that the distance between them may be increased or diminished. It requires that the cars so driven shall be kept at least three hundred feet apart. If the two cars were driven close together there would be danger of collision when the forward car stopped, particularly if the two cars were on a descending grade. The rule was obviously intended to prevent the occurrence of any such casualty. The rule itself permits the cars to approach for the purpose of being connected in case of accident. This shows that the rule was designed for cars separately driven. Of course if the rule was inapplicable, the refusal to admit it in evidence is not a ground for granting a new trial.

The reason given by the court for granting the nonsuit was that it appeared from the evidence submitted for the plaintiff that his own fault contributed to his injury. The court announced that the child jumped from the platform because he was afraid the driver would see him, and that he must, therefore, have known that he was a wrong doer. It is contended for the plaintiff that he cannot be charged with contributory negligence, if he exercised as much care as could be expected of him considering his age, and that whether he did exercise that degree of care was a question for the jury. The cases cited to this point are some of them very strong. The plaintiff, however, was nonsuited not because he was simply careless, but because he was knowingly committing a wrong or trespass which directly contributed to his injury. Whether in this view his youth would entitle him to the same leniency may, perhaps, not be beyond question; but, if it would, we are nevertheless of opinion that the nonsuit was rightly granted, for the plaintiff, however excusable his own fault, was not entitled to recover without proof of fault on the part of the defendant, and we think there was no evidence tending to show that the defendant was guilty of any negligence toward him. The plaintiff was injured because, having got on the rear platform of the forward car, he jumped off

or fell off before the following car.   Now in order to show that the negligence of the defendant contributed to the injury, it is necessary first to show that the defendant owed the plaintiff a duty of care, which if it had duly observed, the injury would not have happened.     Where no care is due there can be no liability for neglecting it.   Now it appears that, before the accident, the driver did not know that the plaintiff had got upon the platform or that he had jumped or fallen off.   The driver, therefore, is not chargeable with any want of care, unless it was his duty to have known that the plaintiff had got on the car.   We think it was clearly the duty of the driver to look forward to his horse and to the road before him, rather than back to the empty cars behind him.   The company is, therefore, not liable on account of any neglect on the part of the driver.   If it be liable at all, it is liable either because it ought not to have permitted the cars to go coupled together, or because it ought to have provided a second man to have charge of them while *en route*, so as to prevent the children on the streets from getting on the platforms.   We do not see how the company can be held to have done wrong in permitting the two cars to go coupled together.   Driven slowly they were neither dangerous nor unreasonably inconvenient.   The only question is, therefore, whether it was the duty of the company to employ a second man to have charge of the cars and guard them from intrusion.

It is well settled that, as a general rule, an owner of property which has been trespassed upon is not liable to the trespasser for any injury resulting from the trespass merely because he might by care have guarded against it.   For instance, a man who digs a pit on his land is not liable to a trespasser who is injured by falling into it, because it has been left unfenced or unguarded.   *Hargreaves* v. *Deacon*, 25 Mich. 1 ; *Hounsell* v. *Smyth*, 7 C. B. N. S. 731.   But the rule has its exceptions.   If the pit be dug on the edge of a public way, where it endangers the safety of the public travel, a traveller who accidentally straying falls into it can recover for the injury.   In such a case the pit is a common nuisance.   In *Lynch* v. *Nurdin*, 1 Q. B. N. S. 29, the defendant's servant left his cart and horse in the public street, unattended, for half an hour.   After a while the plaintiff, a boy between six and seven years old, and other children began to play with the horse and

climb into the cart and out of it. While the plaintiff was getting out, another boy started the horse, so that the plaintiff fell and broke his leg. A verdict in his favor was sustained by the Court of Queen's Bench sitting in *banc*. The court thought that the child was merely indulging a natural instinct in playing with the empty cart and deserted horse, being tempted to it by the most blamable carelessness on the part of the defendant's servant. In *Birge* v. *Gardiner*, 19 Conn. 507, the defendant who put a heavy gate on his own land, beside a pass way which was used by children, going to and from the public road, but left it so carelessly that it fell upon a child between six and seven years old, who shook it in passing, was held to be liable for the injury. In *Railroad Company* v. *Stout*, 17 Wall. 657, the plaintiff, a child six years old, was injured while playing with the turn table of a railroad company. The table was on the company's land, but near two public roads, without visible separation from them, and was left unattended and unlocked, and easily revolved on its axis. The injury happened by the table being set in motion by other boys. It appeared that the boys of the neighborhood were in the habit of resorting to the place for play. A verdict for the injured child against the railroad company was sustained by the Supreme Court of the United States. See, also, the same case before Dillon, J., and a jury. *Stout* v. *Sioux City & Pacific R. R. Company*, 2 Dill. 294.

We know of no cases more favorable to the plaintiff than the three cases last cited, but in all three of them the object which caused the injury was a dangerous object left exposed, without guard or attendant, in a place of public or common resort for children. An object so left is a standing temptation to the natural curiosity of a child to examine it or to his instinctive propensity to meddle and play with it. In *Keffe* v. *Milwaukee & St. Paul Railway Company*, 21 Minn. 207, which was precisely like *Stout* v. *Sioux City & Pacific Railroad Company*, this peculiarity was specifically stated and commented on as the ground of liability. " The defendant knew," say the court, " that by leaving this turn table unfastened and unguarded, it was not merely *inviting* young children to come upon the turn table, but was holding out an *allurement* which, acting upon the natural instincts by which children

are controlled, drew them by those instincts into hidden danger."
These cases seem to reach the limit of liability. They go beyond
what was thought to be the limit in *Mangan* v. *Atterton*, L. R. 1
Exch. 239. In that case the defendant left a dangerous machine,
which might be set in motion by any passer by, unguarded, in a
public place. The plaintiff, a boy four years old, put his fingers in
the machine at the direction of his brother, seven years old, whilst
another boy was turning the handle which moved it, and his fin-
gers were crushed. The court held that the plaintiff could not
maintain any action for the injury. And see *Hughes* v. *Macfie*,
2 H. & C. 744. The case at bar differs very much from the three
cases previously stated, for in the case at bar the cars, instead of
being left unattended, were in the charge of the driver who was
in the act of driving them, so that there was nothing done to en-
courage the trespass, which was merely the result of a momentary
impulse. Ordinarily a man who is using his property in a public
place is not obliged to employ a special guard to protect it from
the intrusion of children, merely because an intruding child may
be injured by it. We have all seen a boy climb up behind a
chaise or other vehicle for the purpose of stealing a ride, some-
times incurring a good deal of risk. It has never been supposed
that it is the duty of the owner of such vehicle to keep an outrider
on purpose to drive such boys away, and that, if he does not, he
is liable to any boy who is injured while thus secretly stealing a
ride. In such a case no duty of care is incurred. See *Lygo* v.
*Newbold*, 9 Exch. Rep. 302; and the remark of Blackburn, J., in
*Austin* v. *Great Western Railway Co.* L. R. 2 Q. B. 442, 446,
and yet such a case is very much like the case at bar. There are
some risks, in regard to which a child ought to be enlightened,
before he is committed to the chances of the street.

In *Hestonville Passenger Railway Co.* v. *Connell*, 88 Pa. St.
520, the plaintiff, a boy between six and seven years old, was in-
jured in an attempt to climb upon the front platform of a horse
railroad car while the car was in moderate motion. The car was a
car used for suburban travel, and, according to custom, was in the
charge of no one but the driver, who, at the time of the accident,
was engaged on the rear platform. The court held that the rail-
way company was not liable for the injury, the injury having

resulted, not from any neglect of the person in charge, " but from the sudden and unanticipated act of the child itself." " It may be assumed," say the court, " that a child, old enough to be trusted to run at large, has wit enough to avoid ordinary danger ; and so persons who have business on the streets may reasonably conclude that such an one will not voluntarily thrust itself under the feet of their horses or under the wheels of their carriages, and *a fortiori* may they conclude that they are not to provide against possible damages that may result to the infant from its own wilful trespass." The doctrine of this case is well supported by other cases. *Morrissey* v. *Eastern Railroad Company*, 126 Mass. 377 ; *Gavin* v. *City of Chicago*, 97 Ill. 66, 71 ; *McAlpin* v. *Powell*, 55 How. Pr. 163 ; *Snyder* v. *Han. & St. Jos. R. R. Co.* 60 Mo. 413. These are all cases of injury to intrusive or trespassing children, in which the defendants were held to be exempt from liability, although they might have prevented the injury, because the kind of care which would have been required to prevent it was not obligatory upon them. And see *Zoebisch* v. *Tarbell*, 10 Allen, 385. The case at bar is in our opinion a case of the same class. The defendant company is not liable for the injury to the plaintiff, because it never incurred any duty or obligation of care to him. If the driver had seen the boy on the platform it might have been his duty, notwithstanding the boy was a mere intruder, to stop the cars and put him safely off. If the driver had stopped the cars, so as to afford the boy an inviting opportunity to get on them, thus tempting his childish instinct, it might have been his duty to look through the cars before starting, and if he found the boy, to remove him. The case presents no such circumstances. We think, therefore, that on this point there was no evidence on which the case could have been properly left to the jury, and that if it had been left to them, and they had found for the plaintiff, it would be our duty to set the verdict aside. Therefore the nonsuit was rightly granted. *Brown* v. *European & N. A. Railway Co.* 58 Me. 384.

*Petition dismissed.*